**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **STEPHAN KENNY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL NO. JKB-26-1810** |
| **PLAZA CONDOMINIUM INCORPORATED, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * * * *

## MEMORANDUM

Plaintiff Stephan Kenny filed suit against Plaza Condominium Incorporated (the "Plaza"), Gary Robey, Kenneth Murray, Eugene Lew, T. Michael Vassant, Janet Strejcek, Joan Goodman, Cheryl Lentz, and Frank Cwalina II.[1] (ECF No. 1.) Defendants Cwalina, Goodman, Lentz, and Strejcek have filed a Motion to Dismiss (ECF No. 12), as have Lew, Murray, Robey, Vassant, and the Plaza (ECF No. 14). The Motions are fully briefed, and no hearing is required. For the reasons set forth below, the two Motions to Dismiss will be granted in part and denied in part.

### *I. Factual Background*

The Plaza is a condominium, and Kenny was its General Manager. (ECF No. 1 ¶ 1.) This case arises out of Kenny's allegations that "Defendants waged a campaign against Kenny seeking his removal as General Manager and to further damage his personal and professional reputation, by maliciously spreading false allegations that he had, among other things, stolen and/or embezzled money and property from the Plaza during his management thereof." (*Id.*) The Plaza has a Board of Directors (the "Board") and, "under its bylaws, the Condominium is an incorporated

[1] Kenny has misspelled certain Defendants' names in his Complaint. The Court will direct the Clerk to correct these names.

Council of Unit Owners, consisting of all of the unit owners, that has the responsibility of administering the Condominium." (*Id.* ¶ 3.) Certain of the individual Defendants—Robey, Murray, Lew, and Vassant—were members of the Board. (*Id.* ¶¶ 4–7.) Kenny refers to these Defendants as the "Majority Group," and the Court will refer to these Defendants as the Majority Group Defendants. The other individual Defendants—Strejecek, Goodman, Lentz, and Cwalina—were members of the Council of Unit Owners. (*Id.* ¶¶ 8–11.) The Court will refer to these Defendants as the Council Defendants.

Kenny alleges that he owns a property management company, Ocean Point LTD ("Ocean Point") and that he became the General Manager of the Plaza in 2020. (*Id.* ¶¶ 15–17.) He was hired as a 1099 contractor, and worked for the Plaza as well as Ocean Point and other associations. (*Id.*) The allegations in the Complaint are somewhat unclear, but he alleges that his contract was extended several times, "until December 2025 when Kenny was informed by Robey and Murray that . . . he had to accept a W-2 position with the Plaza." (*Id.* ¶ 18.) He alleges that he was "under threat of immediate termination according to Robey and Murray if he did not accept the W-2 change in employment status." (*Id.* ¶ 20.) Despite having two years left on his contract, he was terminated on March 9, 2025. (*Id.* ¶ 19.) He alleges that the then-operative employment contract (dated December 11, 2024) included a provision explaining that termination "shall not occur unless and until the General Manager has been provided with a written explanation of such deficiencies and provided a corrective opportunity if such deficiencies are correctable." (*Id.*) Kenny alleges he was never provided such opportunity and that his termination was contrary to his contract and to the Plaza's bylaws. (*Id.* ¶¶ 19, 22.)

He alleges that "[t]he Majority Group refused to allow other lawfully constituted members of the board to discuss, consider or vote on the question of Kenny's termination. With respect to the different 'cause' categories, the other members of the board were precluded from discussing,

or supplying information, known personally to them, which directly [a]ffected the majority Group's allegations." (*Id.* ¶ 22.) Kenny also alleges that the reasons given for his termination "were based on inaccurate, false and/or incomplete facts" and that "[t]he false and inaccurate allegations were maliciously published by certain unit owners including, but not limited to, Str[e]jcek, Lentz, Goodman and Cwalina and recklessly and maliciously relied upon and/or amplified by the Majority Group." (*Id.*) He avers that "[t]he Board Majority fueled by their own false allegations as well as the false allegations of certain unit owners, while 'freezing out' other members of the board demonstrates the campaign against Kenny and how it was to be accomplished." (*Id.* ¶ 23.)

He alleges that:

> One example of the widespread false allegations came in the form of a letter from the Plaza's newly appointed legal counsel to Kenny on March 9, 2026, the date of his termination. In the letter counsel writes that Kenny is being terminated for "cause[.]" It states that cause which is "defined in relevant part" as Mr[.] Kenny's commission of a crime or illegal act . . . actions or inactions. The letter accuses Kenny of physical assault, assault of a guest, improper use of condominium time, personnel and resources, failure to explain payroll tax variance, unauthorized use of QuickBooks, failure to respond to the board, exclusion of board president from a meeting, failure to respond to the board regarding vendors, failure to "ensure compliance with fire safety", failure to provide operational updates and reports and a failure to provide information regarding security cameras.

(*Id.* ¶ 26.) Kenny alleges that each of the allegations is "substantially untrue and/or flatly false." (*Id.* ¶ 27.) He alleges the Majority Group Defendants also drafted a March 20, 2026 letter in which they "doubled down" on the allegations in the March 9 letter. (*Id.* ¶ 28.) He alleges that Defendants published the letter to all unit owners at the Plaza. (*Id.* ¶¶ 28–29.) He alleges that "[t]he Majority Group specifically gave permission to certain unit owners to publish the documents described hereinabove to the public." (*Id.* ¶ 30.)

Kenny further avers that Club Ocean Villas Condominium (another condominium managed by Kenny through Ocean Point) "inform[ed] him that Str[e]jcek had turned over the

cover letter and letter from counsel to them." (*Id.* ¶ 31.) And "[a]nother condominium association managed by Kenny through Ocean Point, Whispering Sands Condominium, was also a recipient of the Majority Group's March 20, 2026, announcement and counsel's March 9, 2026, letter." (*Id.* ¶ 32.) "Further, Legum & Norman, a national community association management firm, was in receipt of the same false allegations in their Ocean City office." (*Id.* ¶ 33.)

Kenny alleges that "additional false allegations accusing Kenny with dishonesty have come from Defendants in the form of their allegations that Kenny did not pay contractors, keeping money for himself." (*Id.* ¶ 35.) He explains that he was required to attend a meeting with Marlin Cove, another condominium that he manages, and that "Marlin Cove declined to sign the contract at that time stating it wished to perform a further review. It was stated at the board meeting that Str[e]jcek shared the materials alleging theft and or stealing of client funds as well as other false statements with Marlin Cove." (*Id.* ¶ 36.)

Kenny also alleges that defamatory statements were posted on the Plaza's Facebook page. (*Id.* ¶ 37.) He alleges the following statements, attributed to various Defendants:

> a. Kenny stole computer equipment and owner information when he was terminated (Cw[a]lina);
> b. "Steve robbed us of time and many other things" (Lentz);
> c. "Can you imagine how much money etc. we lost. Now he has all our records and we both know why. HE cannot give them back as he would self-incriminate. Kenny has all our contact info. The funds he directed to himself … now need redirected to the Plaza…" (sic) (Lentz)
> d. Steve took the rest of our files. He took our computers (Goodman and Str[e]jcek)
> e. Kenny used Plaza money for non-Plaza activities (Lentz)
> f. Kenny attacked a guest. I was there. Cameras everywhere. (Str[e]jcek)
> g. Kenny was fired for insubordination (Cwalina)
> h. He switched QuickBooks from online to desktop to either "steal or hide/coverup" wrong doings (Cw[a]lina);
> i. Use of company assets after termination, if our vendor contracts or paper electronics are missing, theft (Cw[a]lina).

(*Id.* ¶ 37.)

On the basis of these allegations, Kenny brings seven counts, naming all Defendants in each count: Defamation (*per se*); Defamation (*per quod*); Defamation (Negligence); Injurious Falsehood – Disparagement of Title; Invasion of Privacy – False Light; Intentional Interference with Business Relations; and Civil Conspiracy.

## *II. Legal Standard*

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## *III. Analysis*

For the reasons set forth below, the Motions to Dismiss will both be denied in part and granted in part. The defamation claims (Counts I-III) and the conspiracy claim (Count VII) will survive as to all Defendants, as narrowed below. The injurious falsehood claim (Count IV) and the intentional interference with business relations claim (Count VI) will be dismissed as to all Defendants. The invasion of privacy – false light claim (Count V) will be dismissed as to the Council Defendants but will survive as to the Plaza and the Majority Group Defendants.

### *A. Shotgun Pleading*

The Court first addresses The Plaza and Majority Group Defendants' argument that the Complaint should be dismissed due to its shotgun pleading style. (*See* ECF No. 14-1 at 8–11.) While the Court agrees that the Complaint has certain deficiencies that will be addressed further below, the Complaint is not so deficient that it is subject to dismissal in its entirety as a shotgun pleading. Indeed, "[a] shotgun pleading is one that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or one in which it is virtually impossible to know which allegations of fact are intended to support which claims for relief." *Baxter v. AmeriHome Mortg. Co., LLC*, 617 F. Supp. 3d 346, 351 (D. Md. 2022) (citation and alterations omitted). The Complaint here "is clear enough to allow Defendants to respond, because they *did* meaningfully respond." *Id.* (emphasis in original).

### *B. Defamation Claims (Counts I–III[2])*

"Under Maryland law, a properly pleaded defamation claim is accompanied by specific facts establishing the following four elements: (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Daniel v. Home Box Off., Inc.*, Civ. No. ELH-23-233, 2023 WL 8478867, at *10 (D. Md. Dec. 7, 2023) (internal quotation marks and citation omitted).

With respect to the first element, "[a] defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001) (internal quotation marks and citation omitted). And "Maryland has retained

[2] Because Defendants do not separately address the three defamation counts—Defamation (*Per Se*); Defamation (*Per Quod*); and Defamation (Negligence)—the Court does the same.

the common law distinction between defamation *per quod* and defamation *per se*." *Daniel*, 2023 WL 8478867, at *10 (internal quotation marks and citation omitted). "A statement that is defamatory *per se* is one for which the words themselves impute the defamatory character such that the plaintiff need not plead additional facts demonstrating their defamatory nature," while *per quod* defamation requires "extrinsic facts . . . to establish the defamatory character of the words or conduct." *Id.* (internal quotation marks and citation omitted).

With respect to the second element, falsity, "a false statement is one that is not substantially correct." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (internal quotation marks and citations omitted).

With respect to the third element in a defamation claim, that the defendant was legally at fault:

> A plaintiff who is not a public official must show that, at a minimum, the party making the false statement acted negligently. So, in the context of defamation cases involving private plaintiffs, to adequately show negligence, plaintiffs must allege facts sufficient to show that the defendant failed to act as a reasonable person under like circumstances in making the false and defamatory statements.

*Daniel*, 2023 WL 8478867, at *11 (internal quotation marks, alterations, and citations omitted).

With respect to the fourth element:

> The standard for establishing harm . . . is different depending on whether the statement was defamatory *per se* or defamatory *per quod* . . . . In cases in which the statement is defamatory *per se* and was made with actual malice, harm may be presumed . . . . However, in cases in which the statement is defamatory *per quod*, or defamatory *per se* but made without actual malice, a plaintiff must prove actual damages . . . .

*Id.* (internal quotation marks and citation omitted).

Turning to the facts alleged in this case, the only plausible defamatory statements alleged in the Complaint are those contained in the March 9, 2026 letter regarding Kenny's termination and the Facebook statements. To the extent that Kenny seeks to hold Defendants liable for any other allegedly defamatory statements, his allegations are too vague. *See Colossus Media, LLC v.*

*Adalytics Rsch., LLC*, Civ. No. DKC 24-1402, 2026 WL 653630, at *4 (D. Md. Mar. 9, 2026) ("[E]very 'alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege.'" (quoting *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011))). For example, Kenny alleges that Strejcek "shared the materials alleging theft and or stealing of client funds as well as other false statements with Marlin Cove." (ECF No. 1 ¶ 36.) The reference to "other false statements" is plainly too vague, and the reference to the "materials alleging theft and or stealing of client funds" is unclear, given that the Court cannot discern what materials Kenny is referencing. Similarly, his allegation that "[f]urther additional false allegations accusing Kenny with dishonesty have come from Defendants in the form of their allegations that Kenny did not pay contractors, keeping money for himself" (ECF No. 1 ¶ 35) is too vague. It is not clear which Defendants made any such statements, how they were made, or to whom. In addition, Kenny makes allegations regarding a March 20, 2026 cover letter from the Majority Group Defendants, but only vaguely asserts that the March 20 letter "doubled down" on the information in the March 9 letter. Thus, the contents of the March 20 letter are not sufficiently alleged. Accordingly, the Complaint is dismissed as to any alleged defamatory statements other than those referenced below, namely those contained in the March 9 letter and the Facebook comments.

**1. March 9 Letter**

The Court turns first to the March 9 letter regarding Kenny's termination. The only Defendants that could arguably be held liable based upon the allegations in the Complaint are the Majority Group Defendants and the Plaza, who apparently distributed that letter to Club Ocean Villas Condominium and Marlin Cove Condominium Association. To the extent Kenny seeks to advance claims against any other Defendants with respect to the letter, those claims are dismissed.

The Majority Group Defendants argue that the statements made in the letter are not actionable because they were opinion statements concerning a former employee, and that Kenny does not sufficiently allege that the statements were false. (ECF No. 14-1 at 13 (arguing that the "Complaint is replete with legally unactionable statements of opinion and subjective monikers, classifications, and innuendos such that it is impossible to clarify where Defendants' personal beliefs end and legally actionable factual claims begin.").)

However, "defamatory communications may be based on assertions of fact or opinion [and] a false statement of fact cannot escape liability for defamation under the guise of opinion. Thus, when an expression of opinion contains implied assertions of underlying objective fact, the statement may be actionable." *Samuels v. Tschechtelin*, 763 A.2d 209, 242 (Md. Ct. Spec. App. 2000) (citations omitted). But opinion statements that are "incapable of being proven true or false" are not actionable. *Schifanelli v. Queen Anne's Cnty Bd. Of Commissioners*, Civ. No. GLR-20-2906, 2021 WL 3681157, at *7 (D. Md. Aug. 18, 2021), *aff'd sub nom. Schifanelli v. Queen Anne's Cnty. Bd. of Commissioners*, No. 21-1942, 2023 WL 3918679 (4th Cir. June 9, 2023).

It is true that some of the statements in the letter may be in the vein of inactionable opinion statements, such as the allegation that the letter accuses Kenny of "improper use of condominium time." But the allegations in the March 9 letter go beyond vague and subjective assessments of a former employee. Conspicuously absent from the Majority Group Defendants' briefing is any discussion of Kenny's allegation that the letter also accused him of "physical assault [and] assault of a guest." The letter also suggests that Kenny improperly used (and perhaps even stole) Plaza funds, as it accuses Kenny of "improper use of condominium . . . resources" and "failure to explain payroll tax variance." With respect to those statements at a minimum, these are not mere inactionable opinion statements, and the Plaza and Majority Group Defendants are incorrect that "it is impossible to clarify where Defendants' personal beliefs end and legally actionable factual

claims begin." (ECF No. 14-1 at 13.) The Court does not need additional factual context—as Defendants suggest—to assess whether Kenny has sufficiently alleged a false statement.

The Plaza and Majority Group Defendants also argue that Kenny has failed to sufficiently allege that they were legally at fault in making the statements contained in the letters. "In the context of defamation cases involving private plaintiffs, to adequately show negligence, plaintiffs must allege facts sufficient to show that the defendant failed to act as a reasonable person under like circumstances in making the false and defamatory statements." *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, Civ. No. GJH-19-1312, 2021 WL 1215769, at *13 (D. Md. Mar. 31, 2021) (internal quotation marks and citation omitted). To sufficiently allege malice, a plaintiff must allege facts sufficient to establish "that a statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Batson v. Shiflett*, 602 A.2d 1191, 1213 (Md. 1992) (internal quotation marks and citation omitted). Construing the facts in the light most favorable to the plaintiff, as the Court must at this stage, Kenny has sufficiently alleged that the Majority Group Defendants were legally at fault, given that he alleges that they purposefully misrepresented the circumstances surrounding his termination after he refused to agree to a W-2 employment agreement.

Further, the Majority Group Defendants argue that their statements are subject to the common interest privilege. The Court will not dismiss Kenny's claims on this basis at this stage of the litigation.

> The common interest privilege is "one of the four qualified or conditional privileges to defamation." *Shirley v. Heckman*, 75 A.3d 421, 426 (Md. Ct. Spec. App. 2013). It "rest[s] upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest." *Marchesi v. Franchino,* 387 A.2d 1129, 1131 (Md. 1978). As such, the common interest privilege arises when "the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such

> common interest is entitled to know." *Hanrahan v. Kelly*, 305 A.2d 151, 156 (Md. 1973) (quoting Restatement (First) of Torts § 596 (1938)).

*Gyamerah v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, Civ, No. 24-00575-AAQ, 2024 WL 4361854, at *2 (D. Md. Oct. 1, 2024). The Court does not foreclose the possibility that the privilege may apply to the facts of this case, but "it is premature to dismiss the defamation claim on this basis." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 367 (D. Md. 2017). The privilege is an affirmative defense, and "a motion to dismiss under Rule 12(b)(6) 'does not generally invite an analysis of potential defenses to the claims asserted in the complaint.'" *Id.* (quoting *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 185 (4th Cir. 2000)).

Defendants also argue that the Plaza cannot be held liable for any defamatory statements. In support, they cite authority providing that:

> The mere fact that the libel was committed in the scope of the agent's employment has been held insufficient; it must be shown, rather, that the libel was either required by or authorized by the employment. The test of whether a corporation is liable for slander is whether the one uttering the slander did so in endeavoring to promote the corporation's business, within the scope of the actual or apparent authority conferred upon him for that purpose.

*Med. Mut. Liab. Ins. Soc. of Maryland v. Mut. Fire, Marine & Inland Ins. Co.*, 379 A.2d 739, 745 (Md. Ct. Spec. App. 1977). The Court will not dismiss the Plaza on this basis. The Complaint gives rise to the inference that the Majority Group Defendants were acting within the scope of their authority as board members when they distributed the March 9 letter.

With respect to Strecjeck's distribution of the letter, she argues, *inter alia*,[3] that Kenny does not sufficiently allege that she was legally at fault in distributing the letter. (ECF No. 12-1 at 9.) The Court agrees. The allegations give rise to the inference that Strecjeck relied on information

[3] Strejcek also argues that the allegations with respect to her provision of the letters to third parties are "hearsay." (ECF No. 12-1 at 8, 11 n.3.) Such an argument is not relevant in the Rule 12(b)(6) context. *See Rodriguez v. Wipro Ltd.*, Civ. No. 25-00331-KDB-DCK, 2026 WL 962415, at *2 (W.D.N.C. Apr. 9, 2026) ("The Federal Rules of Evidence have limited applicability at the 12(b)(6) stage, where the court's inquiry is confined to whether the complaint, taken as true for pleading purposes, states a plausible claim.").

that was being relayed by the Majority Group Defendants. Without allegations to support an inference that she was, at a minimum, negligent in providing the letter to third parties, the defamation claims against her with respect to the March 9 letter must be dismissed.

### 2. Facebook Statements

The Court next turns to the Facebook statements. Kenny attributes each of the nine statements to different individuals. Thus, each individual Defendant could only be liable for the particular Facebook statements that are attributed to them.

The Council Defendants argue that, with respect to the Facebook comments, Kenny does not provide temporal specifics, that he "characterizes them rather than providing actual substantive quotes," that he "fails to provide any context for any of the purported statements," and fails to specify how the statements were false. (ECF No. 12-1 at 7.) Defendants suggest that there is a "heightened pleading" standing for defamation claims (*id.*), but that is incorrect. *See Est. of Jones v. St. Thomas More Nursing & Rehab Ctr.*, Civ. No. PJM 09-1419, 2009 WL 3247929, at *3 (D. Md. Oct. 1, 2009) (explaining that while "the pleadings in a defamation case must still be sufficiently detailed to enable a defendant to appropriately respond," "a plaintiff need not plead a defamation claim under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure"). While the Complaint could be written more clearly, it sufficiently alleges the nature and contents of the statements made, who made them, and that they were false.

The Council Defendants also summarily argue that "Plaintiff alleges that the [Council Defendants] knew the alleged statements were false and/or that they were made with reckless disregard for the truth, but he alleges no specifics to support those formulaic and conclusory allegations" and that the allegations regarding their state of mind "whether standing alone or read with the rest of the Complaint, fails to satisfy the heightened pleading standard applicable to defamation claims." (ECF No. 12-1 at 7.) First, while they cite general authority regarding a

12(b)(6) motion, the Council Defendants cite no authority to support this statement in the defamation context (*see id.*), and that is insufficient to carry their burden. Second, as previously noted, there is no heightened pleading standard applicable to defamation claims.[4]

Based upon the foregoing, the three negligence counts (Counts I–III) will not be dismissed, although they will be narrowed to only the March 9 letter (as to the Plaza and the Majority Group Defendants) and the Facebook statements (as to the Council Defendants), consistent with the above discussion.

## *IV. Injurious Falsehood – Disparagement of Title (Count IV)*

Kenny brings a claim for "Injurious Falsehood – Disparagement of Title." (ECF No. 1 ¶¶ 58–63.) This claim is more appropriately titled "Injurious Falsehood," given that disparagement of title relates to "aspersions upon the title to property or its quality," *Collings v. MGC Mortg., Inc.*, Civ. No. MAB 14-CV-02973, 2015 WL 13611831, at *5 (D. Md. Feb. 10, 2015) (citation omitted). The elements of injurious falsehood are "(1) the uttering and publication of the slanderous material, (2) the falsity of such materials, (3) malice, and (4) special damages." *Id.*

Kenny has failed to sufficiently allege this tort. He does not sufficiently allege special damages, making only conclusory allegations on this front. (*See, e.g.*, ECF No. 1 ¶ 25 ("Kenny has suffered damage to his reputation and damage to his business interests including Ocean Point. He has lost business and business opportunities because of the Defendants defamatory statements."); *id.* ¶ 62 ("The falsehoods published by Defendants played a material and substantial part in inducing others in not to deal with Kenny, and that, as a result, Kenny suffered special damages."); *id.* ¶ 63 ("As a direct and proximate result of Defendants' conduct Kenny has suffered

---

[4] The Council Defendants raise arguments about specific Facebook statements in their Reply. The Court is not persuaded by these arguments and, in any event, courts generally do not consider arguments raised for the first time in a reply brief. *See United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006).

reputational harm[,] irreparable loss and injury including, but not limited to, lost profits, wage loss, loss of reputation . . . ").)[5]

The only allegation that arguably could support this cause of action is the following:

> As recently as May 5, 2026, Kenny was required to attend a board meeting of The Quarters at Marlin Cove Condominium Association ("Marlin Cove"). Marlin Cove had been a client of Kenny's since 1996. The board wanted an explanation regarding his termination and the allegations of theft and "stealing of funds". One of the purposes of that meeting was to sign a new contract for management with Kenny/Ocean Point. Marlin Cove declined to sign the contract at that time stating it wished to perform a further review. It was stated at the board meeting that Strajcek shared the materials alleging theft and or stealing of client funds as well as other false statements with Marlin Cove.

However, Kenny does not allege that Marlin Cove refused to do business with him, but rather that they required additional time to perform a further review. That is not sufficient to state a claim for injurious falsehood. *See Rite Aid Corp. v. Lake Shore Invs.*, 471 A.2d 735, 741 (Md. 1984) (discussing the "special damages" element of the cause of action, including that "special damages" refers to a "pecuniary loss"); *Mehul's Inv. Corp. v. ABC Advisors, Inc.*, 130 F. Supp. 2d 700, 710 (D. Md. 2001) ("The tort requires that the falsehood be made to a person, who because of the statements, refuses to do business with the plaintiff."). Further, as noted above, Kenny fails to allege that Strecjek was negligent, let alone that she acted maliciously, in distributing any information to Marlin Cove.

Accordingly, Count IV will be dismissed as to all Defendants.

## *V. Invasion of Privacy – False Light (Count V)*

To state a claim for invasion of privacy-false light, "a plaintiff must allege that a defendant has given publicity to a matter concerning another that places the other before the public in a false

[5] True enough, Kenny alleges that "[s]pecifically, management of the Bank of Ocean City who relayed to bank personnel who then informed Kenny that he had been removed from the bank accounts by the Majority Group were due to his financial improprieties." (ECF No. 1 ¶ 25.) However, as an initial matter, the grammatical/typographical errors make this allegation difficult to understand. Further, as far as the Court can discern, it appears that he is alleging that he was removed from the *Plaza's* bank accounts, so it is not clear how this allegation reflects that a third party refused to do business with him.

light if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Alston v. Baltimore Gas & Elec. Co.*, Civ. No. ELH-22-1061, 2023 WL 1472020, at *26 (D. Md. Feb. 1, 2023) (internal quotation marks omitted) (quoting *Chinwuba v. Larsen*, 790 A.2d 83, 102 n.8 (Md. Ct. Spec. App. 2002)).

The Plaza and the Majority Group Defendants rely on essentially the same arguments that the Court rejects above with respect to the defamation claims. Thus, this claim will survive as to those Defendants.

The Council Defendants do the same, but also explain that Kenny does not sufficiently allege the "publicity" element of this cause of action. "To satisfy the first element, disclosure of the private fact must be sufficiently broad such that the fact becomes one of public knowledge. Concomitantly, it is not an invasion of privacy to communicate a fact about someone's private life to a single person or even to a small group of people." *Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 733 (D. Md. 2009), *aff'd sub nom. Henderson v. Claire's Boutiques, Inc.*, 422 F. App'x 269 (4th Cir. 2011) (citations omitted). The Court agrees that Kenny does not sufficiently allege that the Facebook statements were made sufficiently publicly to support a false light claim, as he provides no details about the Plaza's Facebook page on which these statements were allegedly posted. Count V will be dismissed as to the Council Defendants.

### *VI. Intentional Interference with Business Relations (Count VI)*

The elements of intentional interference with business relations are:

> (1) intentional and wil[l]ful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269 (Md. 1994) (citation omitted). For the same reasons that Kenny's injurious falsehood claim fails, so too does his intentional interference with business relations claim. He does not allege any third-party relationships that were damaged, and only makes vague allegations that, for example, "Defendants have intentionally and without justification interfered with Kenny's existing and prospective business relations by making the false statements . . . to the general public, vendors, banks, real estate agents, and other property management companies and others who are or could be business associates, customers or community partners of Kenny." (ECF No. 1 ¶ 75.) Without identifying particular business relationships that were damaged, this claim cannot survive, and it will be dismissed.

### *VII. Civil Conspiracy (Count VII)*

Under Maryland law, civil conspiracy is a "combination of two or more persons by an agreement or understanding to accomplish an unlawful act or use unlawful means to accomplish an unlawful act not in itself illegal, with the further requirement that the act or means must result in damages to the plaintiff." *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (citation and internal quotation marks omitted). To prove conspiracy, "[t]he plaintiff must also prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury." *Id.* With respect to such overt act, "although he must make specific allegations connecting the defendants to the injury, [a plaintiff] need not plead an overt act against each defendant since a single act by one conspirator may sustain a conspiracy claim." *Yates v. Hagerstown Lodge No. 212 Loyal Ord. of Moose*, 878 F. Supp. 788, 803 (D. Md. 1995); *see also Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 639 A.2d 173, 179 (Md. Ct. Spec. App., 1994), *aff'd*, 665 A.2d 1038 (Md. 1995) ("It is not necessary . . . for a plaintiff to allege or prove that each member of the conspiracy committed some independent unlawful act in furtherance of

the agreement, only that one or more of them committed such an act and that harm ensued to the plaintiff as a result."). Further, in a civil conspiracy case, "[a] plaintiff must establish a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc.*, 454 A.2d 367, 372 (Md. Ct. Spec. App., 1983) (citation and quotations omitted).

The Council Defendants—presumably assuming that the Court would dismiss all claims against them—argue that the conspiracy claim against them must be dismissed, but make no substantive arguments in that regard. It is true that "conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995) (citation omitted). Thus, as to those claims the Court dismissed above, the conspiracy claim cannot stand. However, the conspiracy claim will survive as to the defamation claims against them.

The Plaza and Majority Group Defendants argue that Kenny fails to allege "a universal 'confederation' or 'agreement or understanding' of any sort." (ECF No. 14-1 at 26.) They argue that "[t]here is no sketch, even a rudimentary one, of (1) what the agreement was; (2) when it was entered into; and (3) for what purpose this supposed agreement was devised." (*Id.*) Not so. Kenny's allegations raise a plausible inference of some sort of understanding and its purpose. *See Hoffman*, 867 A.2d at 291 (explaining that conspiracies may be proven by circumstantial evidence, and may "be established by inference from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and attending the culmination of the common design." (citation omitted).) Here, Kenny alleges that the Majority Group Defendants wanted him to enter into a W-2 agreement

and that, because he refused to do so, they terminated him for allegedly false reasons, defaming him in the process. That is sufficient at this stage.

The Plaza and the Majority Group Defendants also argue that a conspiracy claim against them is barred by the intra-corporation conspiracy doctrine. "Both the United States Court of Appeals for the Fourth Circuit and Maryland apply the intracorporate conspiracy doctrine, which provides that a conspiracy between a corporation and its agent acting within the scope of his employment is a legal impossibility." *Tffi Corp. v. Williams*, Civ. No. DKC-13-1809, 2016 WL 470865, at *8 (D. Md. Feb. 8, 2016) (quotations and citation omitted). Thus, this doctrine would apply to the extent that the Majority Group Defendants were agents of the Plaza and were acting within the scope of their employment. This is a fact-intensive inquiry, inappropriate for a motion to dismiss. Further, in arguing that the Plaza should not be held liable for any of the statements allegedly made by the Majority Group Defendants, those Defendants suggest that they were *not* acting as agents of the Plaza. (*See* ECF No. 14-1 at 19–20 (arguing that the fact that certain Defendants were Board Members is insufficient to hold the Plaza liable for defamation and citing authority for the proposition that "[t]he test of whether a corporation is liable for slander is whether the one uttering the slander did so in endeavoring to promote the corporation's business, within the scope of the actual or apparent authority conferred upon him for that purpose.").) This too warrants denial of the motion to dismiss with respect to this claim.

## *VIII. Conclusion*

For the foregoing reasons, the Council Defendants' Motion to Dismiss (ECF No. 12) and the Plaza and Majority Group Defendants' Motion to Dismiss (ECF No. 14) will be granted in part and denied in part by separate order.

The claims that survive are the defamation claims against the Council Defendants (limited to the Facebook Statements) and the defamation claims as to the Plaza and the Majority Group

Defendants (limited to the March 9 letter) (Counts I–III); the invasion of privacy – false light claim against the Plaza and the Majority Group Defendants (limited to the March 9 letter) (Count V); and the civil conspiracy claim against all Defendants (Count VII).

DATED this 23 day of September, 2026.

BY THE COURT:

James K. Bredar
United States District Judge